May it please the Court, Benjamin Schultz on behalf of the United States. The United States has participated as amicus in this case because the District Court committed a fundamental error. In purporting to require that the False Claims Act requires objective falsity, the District Court created an atextual standard that not only has no basis in the statute, but is difficult to apply and threatens a large number of cases where the United States itself would like to bring False Claims Act claims. Indeed, just to give some examples of the kinds of claims that the District Court would preclude, if a doctor himself did not believe his own stated opinion that something was necessary, or if a doctor failed to make any inquiry about a patient whatsoever before certifying that a particular treatment was medically necessary, under the District Court's objective standard approach, it would seem that such claims are precluded. Counsel, I want to make sure I understand the United States' position here. Is it that in this particular case the District Court should be reversed even without reaching the objective falsity issue? Your Honor, as a backup argument, we are saying that even if the Court thought that the False Claims Act required objective falsity, there are circumstances where you can objectively prove that certain claims were not medically necessary, certain treatments were not medically necessary. Someone could be providing an opinion that someone had a cardiac problem when in fact they had a sprained ankle. Certainly, and we think there are plenty of other examples. And at the end of the day, if the Court does adopt the objective standard, then I think we could talk about, if the Court wants to, various ways to meet that standard. But I want to really urge the Court not to adopt that objective standard. And one reason why the Court shouldn't adopt it is that this Court itself already rejected that approach in the Hooper case. And indeed, there is no textual basis for it. The Supreme Court itself, in its relatively recent Escobar opinion, explained that when courts interpret the meaning of the term falsity for purposes of the False Claims Act, the Court shouldn't use policy-based reasons to create atextual tests, atextual graphs onto whether or not something is false. Congress was very specific as to the required scienter. Scienter is an entirely separate issue than falsity. And the District Court, in this case, did not, as we read the opinion, say that the plaintiff's claims failed because of scienter. As to scienter, there's a separate statutory test. The False Claims Act, of course, requires that the fraud be knowing. And then there's a statutory definition of what knowing fraud is, and the Court can apply that statutory test as Congress has set it out. So did the United States initially decline to participate in this claim? Your Honor, the United States did decline to intervene. But, of course, that doesn't mean that the United States is commenting on the merits of a claim. When the United States declines to intervene, there can be all sorts of reasons for that. It could have to do with issues of collectability of a judgment. It could have to do with the fact that our investigation is simply not going to be completed by the time that the District Court is asking us to make a determination. It could be that we determine that the cost of litigating the case to us would exceed the likely benefits. It could be any other sorts of reasons. It could just be competing resources that, you know, maybe we think this case is a good one, but there are other better cases out there that bring in more money that we want to devote our resources to. So, yes, we didn't intervene in this case, but that doesn't mean that we are commenting one way or another on the viability of a claim. And, of course, the United States always, even when it declines to intervene in a case, can either seek permission to intervene later if it wants to, or also if it thinks that the claim is one that it would be against the United States' interest to have it pursued, the United States can ask the District Court to dismiss the case over the relator's objections. And all that happened here was that the United States declined to intervene, and it allowed the relator to pursue the case. And we're here now as amicus because the District Court committed a very significant legal error, and we want to make sure that the court does not also commit that legal error in a way that creates problems for False Claims Act cases throughout the circuit. I'd be happy to address any of the particular issues in the defendant's briefs, if the court has questions about those that you'd like us to address. The United States has no position in this case on whether the actual operative complaint alleged see entering compliance with the rules of federal civil procedure. That's right. We're here participating on the legal issue. But in addition to talking about the objective falsity issue, we do want to make clear that if the relator has adequately pled that doctors falsely certified that various treatments, various procedures were medically necessary, then the relator has also met the materiality standard. Because by statute, Medicare cannot pay claims unless they are medically necessary. And so if someone is falsely telling Medicare that something is medically necessary, that is absolutely something that is material to Medicare. The district court, I think, got a bit confused when it started talking about the interqual criteria. The interqual criteria, as far as we understand it, maybe they have some evidentiary basis. Maybe they help the relator get above the plausibility bar. But at the end of the day, if the district court or if any court wants to rule on materiality, the question is whether or not the particular fraud alleged was material to the government. And here the fraud that we understand to be alleged is that doctors falsely certified that something was medically necessary. And if you falsely tell Medicare that something is medically necessary, that is absolutely material to Medicare. So, Counsel, you said that in Hooper we rejected the objective test, but that's an unpublished disposition. It is not, Your Honor. Hooper is a published opinion. What's the citation, the one I had? Sure. That is 688F31037. That's a 2012 opinion from this court. Perhaps Your Honor is looking. I think there was a later appeal in that case, and the later appeal might have been unpublished. But we're citing the 2012 opinion, which is a published opinion. Okay. Thank you. Again, I'd be happy to address. I have that. What's the specific language in that case that you're relying upon? Sure. So it's actually an extended discussion. And you can find that discussion at, it starts at page 1047. And what's going on is that the relator in that case was alleging that there were false estimates. And the relator's position was that because an estimate is a kind of opinion, it's inherently subjective, and therefore can never be false. And this court said that's absolutely wrong. It went on to approvingly cite the court. Where did we say that's absolutely wrong? I'm sorry. Absolutely wrong is a paraphrase. I apologize. I didn't mean to be suggesting that the court said that. But what the court did do is it rejected it, and then it cited the Fourth Circuit's opinion in Harrison. It cited the First Circuit's opinion in Loughran, both of which had said that statements of opinion can be false in a variety of reasons. And then the court approvingly cited them and agreed with their analysis. And that's what we're relying on. And then you make the definitive statement that you're telling us. But what you're saying is if you read the entire analysis, that's the inevitable conclusion. Right. The defendant's position was a statement of opinion cannot be false, and this court rejected that. Okay. Thank you. Thank you. Good morning. My name is Mike Khoury, and I represent Jane Winner. And I'm here, obviously, to urge the court to overturn the district court's dismissal of the complaint. I'd like to start out by answering Judge Bennett's question, and that is, I do not believe that it's necessary for the court to make a decision regarding so-called objective falsity. In my opinion, there's no such thing as objective falsity or subjective falsity. There's falsity and there's truth. I don't believe it's necessary for the court to tackle the questions set forth in Assara Care or St. Mark. The only thing that's necessary for the court to decide is, does the complaint allege allegations that are plausible, and does the complaint allege a fraud with particularity in compliance with the provisions of the federal rules of civil procedure? This complaint at paragraphs 29 through 45, in our opinion, obviously alleges a fraud with particularity. There are statistics that are alleged. The allegations are by my client, who not only is a nurse, but holds the position of director of case management at the hospital where the fraud occurred, and those case managers are specifically responsible for evaluating the quality of the admissions of the doctors through the emergency room. The allegations are plausible. The appellees seem to suggest that doctors have some sort of immunity of being accused of fraud. What the appellees are asking this court to do is rule that a doctor's representation of medical necessity, we're not talking about opinion, we're talking about a representation, a certification to the United States government that the admissions are medically necessary, that somehow, as a matter of law, that cannot be fraud. We know that's untrue. I have the pleasure, for once, being on the same side of the courtroom as the government. It doesn't happen very often in my 38 years. I think this is the second time. A lot of indictments. Counsel, I want to ask you a question unrelated to the major issue in this case. Yes, sir. Dealing with certain of the briefs talking about urging us to reach the Sienter issue as an alternative. I couldn't find anywhere in the district court record that would indicate that you had served Dr. Sacapano and Dr. Nerio with the complaint. Were they ever served? I don't believe that some of the doctors were served, Your Honor. Not every doctor who is named as a defendant has actually appeared because of the way the case proceeded. I'd have to check the docket, but I believe that's true. Okay, thank you. Along that line, did the district court address the Sienter and causation issues? I don't believe it directly addressed those issues, Your Honor. I think Sienter and causation are sufficiently alleged. I was just curious if the district court reached those issues. I don't believe so, Your Honor. What I recall from the district court's opinion is that it was based upon this issue of objective falsity and disagreement between doctors, which leads me to a point of what opinion have we heard that the certifications we allege were in good faith issued as an opinion? None. All we have in this case is a complaint and nothing else. And the complaint clearly alleges with particularity that these doctors are not doctors, they are thieves. That they have stolen money from the Medicare trust fund recurrently. And it's supported with statistics, with a termination of my client after she complained. It's supported by allegations that the determinations of medical necessity were actually untrue by a person who has inherent credibility to issue those opinions. As a matter of fact, that's her job at the hospital. All right, counsel, you have four seconds. Could you wind up, please? I just want to make a comment about the American Hospital Association's brief. It is unabashedly brazen. Well, counsel, do you have anything that you'd like to tell us in terms of the law or something other than castigating the other side? I'm sorry, Your Honor. Just that making certifications of medical necessity cannot be a burden on the health care system. Honesty is never a burden, Your Honor. Thank you, counsel. Thank you very much. May it please the Court, Matthew Umhofer on behalf of Rollins Nelson. Mr. Corey just said it. He just gave it away. And what he did was he said that the claim of falsity here is based on his client's opinion that differed from the doctor's. He just said it. And that's the problem. Regardless of whether he said that or not, we need to look at the complaint. Of course, Your Honor. Your complaint said that there were certifications by physicians of medical necessity, and the district court, among other things, ruled that those certifications can never, as a matter of law, be material. I don't understand how that can be. Well, Your Honor, I think the district court's actual opinion was far more narrow. He said that in this case, under these facts, where all you have is a nurse Monday morning quarterbacking a doctor, a nurse who never saw these patients, a nurse who never saw these patients who came from nursing homes and were already sick. I think he went a lot further. I think he said that in a case where the medical necessity certification is based on what purports to be a clinical judgment, that you can never have a False Claims Act case. And this Court doesn't need to go there. What he went on to say was, and I think he did so in complete alignment with this Court's holdings, that you have to claim in a fraud case why it's false. And so what the district court said was, where all you have is a differing opinion, that's not enough to prove a judgment call false. And it is a judgment call that's in the actual governing statutory, the governing regulations. They say it's based, the decision to admit is based on a doctor's, not a nurse's, a doctor's clinical judgment, clinical expectation as to whether this person is sick enough to be in, to stay in the hospital for two days. But what if the medical records definitively show otherwise? For instance, with the example Judge Bennett gave, what if a doctor admitted someone because of heart problems, and the medical records definitively show all they had was a broken or sprained ankle? Why wouldn't that be enough to show falsity? Well, Your Honor, I think that where there is directly conflicting evidence, facts, that conflict directly with whatever the doctor's opinion or certification is, you'd have falsehood here. That's not what we have in this case. But that's not what, to me, that's not how the district court looked at this. To me, the district court looked at it and said, if we have a doctor's opinion, period, then there can be no falsity alleged, or there can be no falsity demonstrated. Actually, what I think the district court did, the district court used some language that this court need not adopt. And we're not advocating that the court create a demilitarized zone wherever there are doctors exercising their judgment, there can be no falsity. What we are saying is that when you are dealing with complex factors and a judgment called by a physician, you've got to do more than Monday morning quarterback it. You've got to do more than just say, I'm a nurse, I reviewed some medical records, and in my opinion those medical records don't support the judgment. You've got to do more than that. You've got to do more in the complaint than lay out the specifics, have a lot of detail, say that the people were admitted improperly, have facts in the complaint that appear, if true, to demonstrate that, that that's not enough to survive a motion to dismiss. This court said in Cofaso, Your Honor, that in order to state a False Claims Act claim, you have to state why the claim is false. And so we turn to why, what is it in this complaint, the specifics in this complaint that say why it's false. I'm sorry, go ahead. I apologize, Your Honor. No, no, no, go ahead. The answer here is if you ask Mr. Corey why these medical judgments were false, his answer is because my client, a nurse, reviewed some medical records and determined in her opinion that the doctors got it wrong. I read the complaint a little bit differently. I read the complaint as saying, based on the pattern of what was going on, the pressure, the way the money was flowing, trying to increase profits for entities, the individuals who had no business being admitted to a hospital because nothing justified the admission based on what was actually in the records were admitted. Now, maybe they can't prove any of that, but this wasn't summary judgment. Well, Your Honor, actually what, and I think it's very important to look at the allegations in the complaint specifically, and particularly where they concede that most of these patients, many if not most of these patients, could have been admitted to the hospital. Look at the parentheticals in the specific allegations of the patients. Mr. Corey admits in his complaint that these people could have come into the hospital but only for observation. So now you have very fine degrees of judgment being questioned, and it's not black and white here. It's very gray. A physician is taking patients who have come from nursing homes. They're already sick. They're coming in. They are seen by a doctor and diagnosed. This is not a case where nobody saw the doctor and the doctors didn't see the patients. The doctors diagnosed and they were admitted, and there's an admission that they may have been sick enough, and this is where Judge Walter got it right. A lot of cases here, it's just, yes, they were sick, but they weren't necessarily sick enough to cross over that threshold between admitted to the hospital for observation versus inpatient. So you've got physicians exercising judgment here, and in places where the world is gray, it's not black and white, and that's why falsity matters here. Counsel, if we agree with you that you should prevail, how would our opinion read? What would the whole deem be? The opinion would start with this Court's decisions and be it this Court's requirements and be it in a false view. So tell me specifically, what would our holding be? How would it read? The holding would read that it would probably be a mem despo, Your Honor, and it would maybe have a footnote that says we don't need to address objective falsity. It would say that upon a review of this complaint, this complaint alleges falsity, but it does so, but when asked why it's false, the answer is because a nurse disagreed with the doctors on the ground call, a nurse who never saw the patient disagreed with the doctor who saw a patient. Where a statute and where a regulation puts the discretion in the hands of that doctor, and you want that. So basically, you're taking the tact that the district court did. In essence, you're saying that a nurse can never second-guess a doctor. What I am saying is that you have to have more than just a different opinion where there's a judgment call that's being made, and that's the narrow holding here. It's not a broad holding that a physician's judgment can never be questioned, but narrowly where a physician is exercising judgment. But what if it's a false judgment call? If it's false? Just because it's a judgment call should not insulate it from scrutiny as being false. That's correct, Your Honor, but then you have to ask why. Is there a fact in the record that says that this opinion is false? Here, all you have is a nurse. I mean, the district court specifically said these allegations are based on subjective medical opinions that cannot be proven to be objectively false, not on summary judgment because they didn't have enough evidence, but because subjective medical opinions can never be false. And I'm not asking this court to adopt that. What I'm asking the court to do is read the rest of the opinion and adopt the rest of the opinion, which is where a physician is making a determination as to the gray area of whether somebody's sick enough to stay two nights in a hospital. That is a clinical judgment. It's an on-the-ground judgment that a Monday-morning quarterback, by somebody who's reviewing the medical record and says in their opinion, some of these people had these things, but it just wasn't serious enough in order to justify admission. That's not falsity. You want us to say that a nurse can never second-guess a doctor? No, of course not. What I'm trying to say is that— You keep saying by a nurse. Like that makes a difference. Well, and the reason I'm saying this is because the regulations say that the decision needs to be made by the physician, and this particular nurse didn't see any of these patients. The physician did. And what you want, Your Honor, is you want physicians who are looking at patients who come from nursing homes who are already very sick to be able to make those decisions without looking over their shoulder at the government or at a nurse as to whether, okay, I want to admit this person, but I'm worried that I'm going to end up in a false claims act case because I made a false case. Counsel, honestly, I mean, your argument may have some good policy reasons behind it, but what strikes me is that that's an argument that needs to be directed to the Congress because I don't think the Congress adopted the statute that you're urging on us. The Congress required falsity, and we're asking for falsity, and we're asking for a statement of why it's false. And where there's no record here of a black-and-white falsity and just a person's after-the-fact determination, a differing opinion. And that's what a Sarah Care said. That's what the 11th Circuit said just a couple days ago. So I'm going to cede the rest of my time to Mr. Davis. Well, you've exceeded your time. Yes. He has his own time. Thank you, Counsel. Thank you. Thank you. Appreciate it. May it please the Court. Thank you. My name is Thad Davis from Gibson Dunn for Appleease Burl Weiner and SNW Health Management Services. The falsity debate aside, which I won't weigh in on, although I will address materiality in a few minutes. But what I'd like to say first is this panel can affirm on any basis that it sees in the record. There are a number of other issues. Again, I represent Mr. Weiner, who is an employed lawyer for Sycamore, a management entity that was not named here. And then, in turn, I also represent SNW Health, which was a partial owner of Sycamore. And I should note in the reply brief the appellant filed, no mention of Mr. Weiner or SNW Health. In the remarks from appellants or from the government, no mention of Mr. Weiner or SNW Health. And the reason that matters, I'll walk through the flaws as to my clients, who are not doctors, obviously. Mr. Weiner is a 49-year member of the California Bar in good standing. He's actually here today. And the reason I note that is letting this case proceed as to him, given the pleading flaws, is, well, it defies Rule 9b. It defies the reason we have pleading rules. And the specific flaw I'd like to note is there's been no tying of Mr. Weiner or SNW Health, for that matter, to any submission of a false claim or causing a false claim to be submitted to the government for payment. And that's crucial. And, again, Corinthian Colleges, 655 F3rd at 992, this court said that Your Honors can affirm on any basis you find in the record, even if Judge Walter didn't consider it. And the ones you're arguing he didn't consider? Well, what I would say, Your Honor, is he dropped a footnote, I believe it was footnote 2, saying there's some persuasive arguments here, but I'm not going to reach them. And on C-Enter? C-Enter. And, actually, I should note there's literally not a single allegation of C-Enter against Mr. Weiner or SNW Health. But the judge never reached the C-Enter issue other than that footnote, and there are actually some of the defendants who may have waived the claim that the complaint didn't adequately allege that because their time for answer passed and they didn't make that in a motion, right? I can't speak to those other people that aren't my clients, Your Honor. Counsel, do you just represent Mr. Weiner and SNW? Yes. Yes, Your Honor. And I would urge, leaving aside all the policy debates, both directions, I would humbly ask that the court be very precise about there could obviously be an affirmation to some parties and not others, specifically with regard to Mr. Weiner and SNW Health. There's been no pleading tying them to a false claim, which is the essence of a False Claim Act case. And it makes sense. Mr. Weiner was an employed lawyer of the management entity. He did not submit. He wasn't treating anybody. He wasn't submitting claims. He wasn't certifying us to patients. He wasn't submitting claims. There are very vague sort of group pleading allegations that try to lump in Mr. Weiner and SNW Health and a couple of the Rollins-Nelson entity. Corinthian Colleges, again, says that's not enough in a False Claims Act case. Again, it's Rule 9b. It's a pleading issue, so it's amenable to being just subject to 12b-6. Couldn't the complaint be amended to include specific allegations if that's the deficiency? Well, Your Honor, we had multiple meet-and-confers. There's been three. I hate to say three strikes and you're out, but they've had three pops, three tries at. They've known who the parties were in terms of, and the relator was inside the hospital, had access to documents. Was there ever any dismissal of your clients on the grounds you're urging us to affirm on? No, Your Honor, there has not been. There was previous briefing, but then it was amended. But there was no attempt to tweak the issue with tying it. Again, you have to specifically tie a False Claims Act defendant before you can put them through discovery and all the panoply of stuff afterwards to a false statement or causing a false claim to be submitted. But it makes sense. SNW Health is an owner of Sycamore. It's not an entity that manages or does billing or does anything. Mr. Weiner is an employed lawyer for Sycamore. Again, there's been no tying him back. There are a number of allegations as to whether amendment would actually help giving the relator another shot. There are specific recitations of an email, a meeting, a phone call, none of which copied Mr. Weiner or SNW Health. They didn't attend the phone call that's alleged. They didn't attend the meeting that was alleged. So I actually don't think that the relator's not going to manufacture new facts. She sort of put every detail in there that she could, and it just does not tie any false claims to my clients. So I would urge the court to consider that. But you were also going to talk about materiality. Yes, Your Honor, and I should say some of my time was ceded to me by Dr. Pascal and his counsel asked that we make the point that Dr. Pascal also was not mentioned and has not been tied to any submission of false claims. But as to materiality, there's an important distinction that may have gotten lost. The pleading the relator has made of differences of opinion, her, and it's not that she's a nurse, it's that she's not a licensed physician, and certification has to be by a licensed physician, as counsel noted. But her disagreement with the physicians is based on the interqual standards. And again, for a false claim act to proceed past 12b-6, this is a pleading matter. You have to plead that there was a material misstatement of the statute, something that Medicare relies on in making payment. Well, she's pledged that there were certifications of medical necessity when there wasn't medical necessity. But her opinion of what was medically necessary is based on the interqual standards. I don't think it's based entirely on that, and I think that there's more in the complaint than that. But the ground the court went on essentially was that you can't have that this certification can never, in this kind of a circumstance, be material because opinions can't be proven to be false. Well, I would probably join in my colleague's opinion that this court doesn't have to go there and resolve that bigger question. But if the district court didn't consider the materiality, we don't really have a basis for determining whether or not the district court erred in that regard. And so you're asking us to go through the complaint, set aside what the district court did, and determine for ourselves whether or not the complaint is material? Yes, Your Honor. In the Corinthian College's case, this court said we can get into the record and find— We can, but we generally, if the district court has not fleshed out the issue for us, we generally don't wade into it. Understood, Your Honor. I will say that if you look through paragraph by paragraph—I'm looking at paragraph 70 right now of the complaint, the Second Amendment complaint—it says, did not meet inpatient criteria for admission to the hospital. That's defined in the complaint as the inter-qual criteria. Medicare has expressly disavowed the inter-qual as material to its decisions on payment. So what an appellate has done, the relator's done, is now fall back on insufficient records. But even there, it's getting into immaterial differences. For example, paragraph 70, there was urinary tract infection. The relator says, there was only two bacteria present when I looked at the documentation, and the Medicare's billed for kidney and urinary tract infection treatment. There's no false statement in a DRG submission such as that. And there's something in the documentation that shows the infection. But that's the level of detail. Again, relying on inter-qual and quibbling—I hate to use the word quibbling, but trying to apply a set of criteria to contradict what the treating physician did. All right. Thank you, Counsel. You've exceeded your time. Thank you, Your Honor. Thank you both. Verbuttal? Yes, Your Honor. I'd like to just be very brief and give my colleague from the government— Verbuttal is one person. We already made that clear. All right, Your Honor. Essentially what counsel are arguing is that a nurse cannot accuse a doctor of lying when he or she certifies an admission to a hospital as medically necessary. It's true that only doctors can make that certification. The nurse is claiming the doctors lied. That's plausible. It's assumed to be true because there's nothing—we're not at summary judgment. We're not before the trier of fact. It's assumed to be true. It's plausible. Doctors lie, and it's alleged with particularity. The other thing is it's true that these patients came into the ER sick. That's what makes the fraud so insidious. And they come in sick, and when they're admitted, they're admitted under a certain DRG code, which is alleged in the complaint, which Medicare, when the bill goes in, Medicare pays. So how materiality can be a question is beyond me. Well, counsel, materiality wasn't decided by the court. What I wanted to ask you about is what's your position regarding Mr. Weiner, Dr. Pascal, and SNW management? Do you—is it your view that you have sufficiently alleged a claim against those three? I believe—I'm sorry, Your Honor. I believe there are allegations in the complaint that tie Dr. Pascal to looking at patients in the ER room and admitting them fraudulently. The corporate defendants are the ones that own the hospital, and we allege that they control the hospital, and we allege that they were the ones that set the policies for the fraud and the upcoding of the DRG codes. What about Mr. Weiner? I believe Mr. Weiner was responsible for setting those policies, and I believe that's in the complaint. All right. We'll check. Anything else, counsel? No, Your Honor. Thank you very much. All right. Thank you to all counsel for your helpful arguments in this case. The case just argued is submitted for decision by the court.
judges: Rawlinson, Owens, Bennett